UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIAH RIVERS, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL NO. 3:CV-05-0091 |
| v. | : |
| | : (CHIEF JUDGE VANASKIE) |
| A. STRATTON, ET AL., | : |
| | : |
| Defendants. | : |

# M E M O R A N D U M

## I.   Introduction

On January 12, 2005, Plaintiff Mariah Rivers, an inmate presently confined at the Huntingdon State Correctional Institution ("SCI-Huntingdon"), Huntingdon, Pennsylvania, filed this action pursuant to 42 U.S.C. § 1983 challenging defendants' decision to restrict his visit with minors, including his daughter, to non-contact visits.  Rivers, who proceeds *pro se*, claims that while housed at other Pennsylvania Department of Corrections ("DOC") facilities he was not subjected to this restriction, and therefore believes this limitation on his visits with minors is in retaliation for his filing of grievances.  Rivers also claims his custody level was raised from 2 to 4 without justification upon reception at SCI-Huntingdon.  Finally, Plaintiff claims one defendant verbally threatened him.  Named as defendants are the following SCI-Huntingdon staff members: Correctional Counselors Stratton, Cook and Hollibaugh; Superintendent J.

Grace; and Unit Manager Granlund.

Defendants have moved to dismiss, or in the alternative, for summary judgment, based, in part, on Rivers' alleged failure to properly exhaust administrative remedies. After being granted additional time to file response to the instant motion, Rivers filed a "Motion to Challenge or Quash Defense Motion for Dismissal." (Dkt. Entry 27.) I will construe this submission as Rivers' brief in opposition to defendants' motion. After careful review of the summary judgment record, I find that Rivers failed to properly exhaust administrative remedies with respect to all claims raised in the Complaint. Of the issues raised, the uncontested record reveals that Rivers only pursued the non-contact visitation matter via the prison's administrative remedy system. As for this claim, Rivers did not properly exhaust his administrative remedies. At the third and final level of the grievance process, Rivers' appeal was dismissed without consideration after he failed to properly comply with procedural requirements. Thus, this claim is procedurally defaulted and, therefore, subject to dismissal. Defendants' motion, therefore, will be granted.

## II.     Factual Background

Rivers was transferred from SCI-Camp Hill to SCI-Huntingdon on June 8, 2004. Upon arrival at SCI-Huntingdon, Rivers' custody level was raised by Defendant Stratton from 2 to 4. (Dkt. Entry 1, pp. 2.)

According to Rivers, in 1992, at the age of 17, he accidently killed his best friend,

who was 16 at the time.  Pursuant to DC-ADM 812, the DOC's Inmate Visitation policy, inmates who have committed an assaultive offense against a minor victim are automatically assigned non-contact visitation status will all minors.[1]  Only the Superintendent of a facility can authorize contact visits with a minor for an offender who committed an assaultive offense against a minor.  (Id. at pp. 2, 14 - 15.)  Pursuant to DC-ADM 812, Defendant Stratton directed that Rivers have only non-contact visits with all minors, including his young daughter.  Rivers claims that SCI-Huntingdon is the first DOC facility to impose such a visitation restriction upon him.  Plaintiff claims he was permitted contact visits with minors from 1993 to 1999, and then from 2001 until his transfer to SCI-Huntingdon.  Rivers notes that SCI-Huntingdon officials continue to deny him contact visits with his daughter even though a DOC Central Office official stated there are "no restrictions on [his] visiting list."  (Id. at p.11.)

In late August 2004, Rivers sought reconsideration of his non-contact visitation with minors status.  An institutional vote sheet was completed by staff, denying Rivers' request for an exemption.  In late November 2004, Rivers renewed his request for another vote sheet to reconsider his visitation situation.  Defendant Cook denied this request and advised Rivers that his "recent attempt to have [his] cellie place [his] daughter on his [visiting] list so [he] could have a contact visit with her reinforces my decision to not process [his request]."  (Dkt. Entry 1, p. 17.)

---

[1] A copy of this policy can be found at www.cor.state.pa.us, Pennsylvania Department of Corrections, DOC Policies.

Rivers' last claim is that after he began using the grievance system to contest the non-contact visitation restriction defendant Cook "threatened" him and told him that as long as he was at SCI-Huntingdon he would not have contact visits with his daughter.  (Id. at pp. 6 and 16.)

Rivers seeks a court order requiring the DOC to permit him to have contact visits with his daughter and other minors.  He also seeks an order to prevent DOC officials from placing him in the institution's Restricted Housing Unit and from otherwise retaliating against him due to his filing of the present action.  He also seeks an institutional transfer, noting that he does not feel safe at SCI-Huntingdon.

As for exhaustion of administrative remedies, at some point Rivers filed grievance # 90225 challenging SCI-Huntingdon's visitation restrictions.  On September 15, 2004, Superintendent Grace denied his appeal, but advised Rivers that "following a lengthy positive institutional adjustment, [he] may certainly request reconsideration in regard to contact visits with minors."  (Id at p. 14.)   Rivers then filed a letter appeal to final review.  (Dkt. Entry 18-6, Exhibit E, p.3, River's Letter of October 3, 2004, Final Appeal.)  Rivers advised the DOC that "I can't provide your office with any forms because I can't afford copies and every time I send your office my originals of past matters I don't get them back."  (Id.)  On October 20, 2004, Rivers' appeal was dismissed on the ground that Rivers failed to comply with the pertinent procedures that required him to include "photocopies of the initial grievance, Initial Review, Initial Review

Response, and the Appeal to the Facility Manager along with the Facility Manager's decision." (Dkt. Entry 18-3, Exhibit B, DC-ADM 804, Inmate Grievance System Policy, VI, D, 1, h.) The Office of Inmate Grievances and Appeals had previously warned Rivers that failure to provide the proper documentation in connection with his appeal would result in the appeal being dismissed. (Dkt. Entry 18-6, Exhibit E, p. 2, Letter dated October 20, 2004.)

### III.     Standard of Review on Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. In determining whether a genuine issue of fact exists, all doubts as to the facts are resolved in favor of the nonmoving party. So too are all reasonable inferences from the facts drawn in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir.2004). Rule 56(c) imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met this requirement, the burden shifts to the opposition to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The evidence need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a plaintiff may not simply

"replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).  At the summary-judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

## IV.     Discussion

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  See 42 U.S.C. § 1997e(a); Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . ."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit. Booth v. Churner, 532 U.S. 731, 738 (2001).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).  Additionally, "proper" exhaustion under the PLRA "mean[s] that the inmate must follow the procedural requirements of the prison grievance system."  Lock v. Nash, 3:CV-04-0539, 2005 WL 2465249 *1 (3d. Cir. October 6, 2005)(citing Spruill, 372 F.3d. at 228).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system

will result in a procedural default of the pursued issue.  Spruill, 372 F.2d at 230 - 232.

Procedural default under § 1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a)."  Id. at 231 - 232.  Thus, a prisoner's failure to follow the procedural requirements of the administrative remedy process bars the prisoner from bringing a claim in federal court.  Id., 372 F.3d at 227-32.  "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)(quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D. N.Y.1998)).

        The failure to exhaust available administrative remedies is an affirmative defense.  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002).  As such, it must be pleaded and proven by the Defendants.  Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).  Defendants have properly done so here.

        The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement.  37 Pa. Code § 93.9(a); see also Dkt. Entry 18-3, Exhibit B, DC-ADM 804, Inmate Grievance System Policy.  After an attempt to resolve problems informally, an inmate may submit a written grievance to the prison Grievance Coordinator for initial review.  An inmate may appeal the decision of the Grievance Coordinator to the Superintendent of the institution,

and can finally appeal to the Secretary of the Department of Corrections Office of Inmate Grievances and Appeals.  See Booth, 206 F.3d at 292 n.2 (discussing Pennsylvania's Inmate Grievance System).

The DOC's Administrative Grievance System outlines the procedural responsibilities of both staff and inmates.  The policy specifies the form on which a grievance must be initiated and time frames within which grievances must be initiated and then appealed.  The policy also requires inmates appealing to final review to include "photocopies of the initial grievance, Initial Review, Initial Review Response, and the Appeal to the Facility Manager along with the Facility Manager's decision."  (Dkt. Entry 18-3, Exhibit B, DC-ADM 804, Inmate Grievance System Policy, VI, D, 1, h.)  The policy clearly states that an inmate's failure to comply with these requirements may result in the grievance being dismissed.  The policy, however, is not so rigid that it does not allow, upon a properly filed request, extensions of time to comply with any of the mandated time frames, or for a limited anticipation of monetary funds from an indigent inmate's account for the purpose of submitting the required photocopies to the Secretary's Office of Inmate Grievances and Appeals for final review of an inmate's grievance.  See Id., VI, B, 1, c; VI, C, 2, a; and VI, D, c and i.

Defendants assert that Rivers failed to properly exhaust his available administrative remedies with respect to all claims raised in this action.  Defendants have submitted the unsworn declaration of Tshanna Kyler, the Grievance Officer in the Secretary's

Office of Grievances and Appeals.  See Dkt. Entry 18-2, Exhibit A, Kyler Declaration.  Ms. Kyler avers that during the time period of June 2004 through January 2005, Rivers successfully exhausted only one grievance under the DOC's Inmate Grievance Policy.  (Id. at ¶ 11.)  This grievance, however, dealt with the confiscation of clothing and the unprofessional conduct of an officer relating to Rivers' photographs.  (Id. at ¶ 12.)  Rivers appealed two other grievances to final review, but each was dismissed after he failed to forward all of the required documents necessary for final review.  See Dkt Entry 18-5, Exhibit D, Grievance # 87237 re: property issues; and Dkt. Entry 18-6, Exhibit E, Grievance # 90225 re: visitation with minors.

The first time Rivers failed to submit the proper documentation to final review, the Secretary's Office of Inmate Grievances and Appeals wrote to Rivers reminding him of his responsibility to provide the necessary documentation for proper review and gave Rivers ten additional working days to remedy his failure to include the proper paperwork.  Rivers was advised that further grievance appeals that did not contain the requisite documentation would result in their dismissal on procedural grounds. (Dkt. Entry 18-5, p. 8, August 23, 2004, Letter to Rivers from the Secretary's Office of Inmate Grievances and Appeals.)  Rivers' appeal to final review of grievance no. 87237 was ultimately dismissed after he failed to forward all the required documents.  (Id. at p. 2.)  By letter dated October 20, 2004, Rivers was advised that his appeal to final review of grievance no. 90225, which contested his visitation restrictions with minors, was dismissed due to his failure to submit the required documentation.  (Dkt. Entry 18-

6, p. 2.)

Rivers does not contest Defendants' representation of the pertinent facts. Rather, he cites the following cases for the proposition that exhaustion is not required prior to initiating a civil rights action: Wilwording v. Swenson, 404 U.S. 249 (1971); and Houghton v. Shafer, 392 U.S. 639 (1968). According to Rivers, these cases establish that "a prisoner does not have to exhaust his administrative remedies before filing a section 1983 suit." (Dkt. Entry 27, Rivers' Opposition Brief.)

Rivers' reliance on these cases is misplaced as they predated enactment of the PLRA, which mandates exhaustion of administrative remedies. And while a prisoner need not allege in his complaint that he has exhausted administrative remedies, Ray v. Kertes, 285 F.3d 287 (3d Cir.2002), a defendant may procure the dismissal of an action by showing that administrative remedies have not been exhausted. Illustrating Rivers' error in relying upon pre-PLRA cases is the statement of the Supreme Court in Porter v. Nussle, 534 U.S. 516, 532 (2002), that while "[p]risoner suits alleging constitutional deprivations while incarcerated once fell within this general rule" [of non-exhaustion] . . . exhaustion in cases covered by § 1997e(a) is now mandatory." Id., 534 U.S. at 523-524.

As noted previously, Rivers does not contest the fact that he failed to properly exhaust administrative remedies with respect to any of the claims asserted in the Complaint.

Accordingly, this action is subject to dismissal in its entirety.[2]

### IV.   Conclusion

There is nothing in the record to create a genuine issue of material fact with regard to whether the Plaintiff properly exhausted available administrative remedies. Defendants have thus met their burden of showing that Plaintiff failed to exhaust available administrative remedies before filing his complaint.  An appropriate order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

---

[2] Since the exhaustion of administrative remedies is a threshold issue, there is no need to consider Defendants' arguments that the Complaint fails to state a valid § 1983 claim.

# UNITED STATES DISTRICT COURT
# FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

MARIAH RIVERS,                                :
                                              :
        Plaintiff,                   :
                                              :   CIVIL NO. 3:CV-05-0091
        v.                           :
                                              :   (CHIEF JUDGE VANASKIE)
A. STRATTON, ET AL.,                          :
                                              :
        Defendants.                  :

## O R D E R

**November 21, 2005**

**AND NOW**, for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED THAT**:

    1. Defendants' Motion for Summary Judgment (Dkt. Entry 14) is **GRANTED**, and this action is dismissed for failure to exhaust administrative remedies

    2. All pending motions in this matter are dismissed as moot

    3. The Clerk of Court shall mark this matter **CLOSED**.

    4. Any appeal from this Order shall be deemed frivolous.

                                  **s/ Thomas I. Vanaskie**
                                  Thomas I. Vanaskie, Chief Judge
                                  Middle District of Pennsylvania